O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 08-1671 PSG (PLAx) | Date | June 29, 2009 |
|---|---|---|---|
| Title | Brianna Marcotte v. Palos Verdes Peninsula Unified School District | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s):                Attorneys Present for Defendant(s):

Not Present                                     Not Present

**Proceedings:**     **(In Chambers) Order Affirming the Administrative Law Judge's Decision**

## I.    Background

Plaintiff Brianna Marcotte ("Brianna") seeks review of a due process hearing that was held before the Honorable Glynda Gomez, an administrative law judge ("ALJ Gomez") over a six day period in October of 2007. That hearing, and this lawsuit, concern defendant the Palos Verdes Peninsula Unified School District's (the "District") alleged failure to provide Brianna with a free and appropriate education ("FAPE").

On June 16, 2009, a one day court trial on Brianna's claims commenced. The Court now issues its Findings of Fact and Conclusions of Law in this Order.

## II.    Legal Standard

Federal Rule of Civil Procedure 52(a)(1) states that "[i]n an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court. Judgment must be entered under Rule 58." Fed. R. Civ. P. 52(a)(1).

## III.    Findings of Fact

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-1671 PSG (PLAx) | Date | June 29, 2009 |
|---|---|---|---|
| Title | Brianna Marcotte v. Palos Verdes Peninsula Unified School District | | |

A.      General Background

In the summer between fourth and fifth grade, Brianna was vacationing with her grandmother when she suffered a major seizure which caused temporary paralysis of the right side of her body.  (Ex. 12 at p.1.)  Shortly thereafter, she was diagnosed with Pachygyria with simple seizure disorder.  (*Id.*)  Put simply, Pachygyria is a congenital malformation of the brain which is associated with seizures, developmental delay, and neuropsychiatric dysfunction. (Administrative Transcript ("AT"), Oct. 1. 2007, 11:9-15; *see also* Ex. 12 at pp. 4-5).

After Brianna completed ninth grade at a boarding school in Keswick, Virginia, she and her parents, Brian Marcotte ("Mr. Marcotte") and Nan Marcotte ("Mrs. Marcotte") (collectively, the "Marcottes") moved to California.  (AT, Oct. 1, 2007, 51:3-56:22.)  More specifically, they moved within the Palos Verdes Peninsula Unified School District (the "district").  (*Id.* at 56:23.) Upon arrival, Brianna and her parents visited schools in the district to determine exactly where to place Brianna.  (*Id.* at 56:21-57:18.)  For instance, they observed classes at Palos Verdes High School.  (*Id.*)  However, as Brianna had, in the past, found greater success in smaller schools, Brianna and her parents also visited schools of that nature, including Summit View School, (*id.* at 59:7-20), which is a non-public agency in Culver City, California.  In the end, the Marcottes decided to enroll Brianna in Summit View School rather than Palos Verdes High School.  (*Id.* at 59:16-25.)

B.      The First Round of Assessments

In 2005, the Marcottes, hoping to obtain public funding for Brianna's placement at Summit View School, requested that the District assess Brianna to determine her eligibility for special education.  (AT, Oct. 2, 2007, 28:5-29:1.)  After the Marcottes made this request, Brianna underwent a series of assessments.  They were as follows:

Kathy Barry ("Barry"), the school nurse at Palos Verdes High School, conducted a health and developmental assessment on September 19, 2005.  (Ex. 7.)  She issued a report detailing Brianna's birth history, developmental milestones, and medical history.  (*Id.*)  This report was based primarily on a developmental questionnaire completed by Mrs. Marcotte.  (*Id.*)

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-1671 PSG (PLAx) | Date | June 29, 2009 |
|---|---|---|---|
| Title | Brianna Marcotte v. Palos Verdes Peninsula Unified School District | | |

That same month, Carolyn Hardesty ("Hardesty"), an occupational therapist with the District, conducted an occupational therapy assessment.[1]  (*Id.* at 32:11-47:6; Ex. 10.)  In a report dated October 12, 2005, Hardesty first details the tests she administered, as well as the interviews she conducted with Brianna, her parents, and teachers.  (Ex. 10.)  While the report notes that Brianna had difficulty with dexterity in her right hand and fingers, it also observed that "assessment information reveals that Brianna demonstrates the ability to complete many fine tasks asked of her . . . ."  (*Id.* at p. 7.)  In the end, Hardesty recommends a collaborative consultative model.  (*Id.* at p. 8.)

Also in September of 2005, Barbara McGinty ("McGinty"), a speech and language pathologist with the District, prepared a report that details the speech and language assessment she conducted.  (Ex. 8.)  Ultimately, McGinty concluded that Brianna displayed age-adequate receptive and expressive language skills.  (*Id.* at p. 7)  However, the report also noted that Brianna demonstrated deficits in the areas of idiom understanding and immediate auditory memory for sentences and digit recall.  (*Id.*)  In light of these findings, McGinty recommended that Brianna use developing strategies to strengthen her memory.  (*Id.*)

One month later, on October 10, 2005, the District's school psychologist, Linelle Mitchell ("Mitchell"), prepared her report.[2]  (Ex. 9.)  This assessment took place over several days and took into account (i) an initial interview with the Marcottes; (ii) an observation and consultation with Brianna's teachers; (iii) a review of Brianna's medical history and records, which consisted of a 1988 assessment by Dr. Blaine Bourgeois ("Bourgeois"), neuropsychological/cognitive evaluations conducted in 1998 and 2002 by Brianna's neuropsychologist, Nancy Markel ("Markel"), a 2000 occupational therapy evaluation administered by Mary J. Kawar ("Kawar"), and a 2005 audiology report from Carol J. Atkins ("Atkins"); (iv) the Summit View School individualized educational program ("IEP"); and (v) a variety of tests.  (*Id.*)

---

[1] Prior to meeting with Brianna, Hardesty had never assisted a student with Pachygyria.  (AT, Oct. 4, 2007, 55:9-11.)  However, she became familiar with the disease after reviewing her records and consulting with district staff.  (*Id.* at 55:12-14.)

[2] Prior to meeting Plaintiff, Mitchell had never assessed a child with Pachygyria.  (AT, Oct. 5, 2007, 138:22-24.)  In preparation for the upcoming assessment, Mitchell educated herself about Plaintiff's condition by reading in-depth the evaluation reports provided to her by the Marcottes and through Internet research.  (*Id.* at 139:5-11.)

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1671 PSG (PLAx) | Date | June 29, 2009 |
|---|---|---|---|
| Title | Brianna Marcotte v. Palos Verdes Peninsula Unified School District | | |

Among other things, the report notes that in conducting this assessment, Mitchell had Brianna complete a Behavior Assessment System for Children ("BASC"). (*Id.* at p. 21.) With a focus on assessing both adaptive and maladaptive behaviors, the BASC evaluates the behaviors, thoughts, and emotions of children and adolescents. (*See generally* Cecil R. Reynolds & Randy W. Kamphaus, The Clinician's Guide to the Behavior Assessment System for Children (2002).) Although the BASC scores generally did not provide any at-risk or clinically significant scores, nine of Brianna's responses in the BASC L index were in the caution or extreme caution range.[3] (Ex. 9 at p. 21.)

The report also reviews the Achenbach Behavior Rating Scales Youth Self-Report ("YSR"). (*Id.* at p. 20.) There were no clinically significant or borderline behavior scales reported in the Achenbach YSR. (*Id.* at p. 21.) As for Brianna's mother, she completed the Achenbach Child Behavior Checklist. (*Id.* at p. 18.) Her responses indicated that Brianna was suffering from clinically significant behavior scales in somatic complaints, social problems, anxiety/depression, withdrawal/depression, and thought problems. (*Id.* at p. 20.) Additionally, Mrs. Marcotte indicated that Brianna had trouble getting along with peers and had recently begun showing tendencies of obsessive compulsive disorder ("OCD"). (*Id.*)

Lastly, the report contains in-class behavior evaluations of Brianna prepared by some of her teachers and administrators at Summit View School. One of her teachers expressed concern that she often appeared withdrawn, fearful/anxious, and lacked confidence. (*Id.* at p. 7.) These concerns were echoed by the school counselor, Tiffany Sullivan ("Sullivan"), who stated that she observed Brianna as having extreme anxiety and fearful thoughts. (*Id.* at p. 8.) In part, these observations were confirmed by Mitchell herself when she visited Brianna at Summit View School to conduct an in-class observation. According to the report, Brianna was quiet in class, frequently held her hands close to her face, and constantly picked at her lower lip. (*Id.* at p. 7.)

C.   The Initial IEP Team Meeting

On October 17, 2005, the District convened an IEP team meeting to determine if Brianna was eligible for special education services. (Ex. 2.) The team included, among others, Cathryn Boyd ("Boyd"), a program specialist with the District, McGinty, the speech and language

---

[3] The BASC L index measures a child's tendency to respond in a socially desirable manner instead of truthfully. (*Id.* at p. 21.)

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-1671 PSG (PLAx) | Date | June 29, 2009 |
|---|---|---|---|
| Title | Brianna Marcotte v. Palos Verdes Peninsula Unified School District | | |

specialist who assessed Brianna, Mitchell, the school psychologist who assessed Brianna, Leith Emery ("Emery"), a special education teacher at Palos Verdes High School, Hardesty, the occupational therapist who assessed Brianna, Andrea Tytell ("Tytell"), counsel for Brianna, Markel, Brianna's neuropsychologist, Barry, the school nurse at Palos Verdes High School, and the Marcottes. (*Id.* at p. 18.) The assistant director of Summit View School, Shelia Zaft ("Zaft"), also attended, albeit not in person, but by telephone. (AT, Oct. 3, 2007, 67:4-10.)

At the meeting, the IEP team reviewed the results and recommendations of the assessments, and the teacher reports from Summit View School. The IEP team also received input provided by Zaft. Among other things, the issue of OCD behaviors and anxiety was discussed on October 17, 2005. (*Id.* at pp. 20, 22.) However, as the testimony of Zaft indicates, apparently the general consensus was that Brianna's OCD behaviors and anxiety were ultimately non-issues:

> Q.   Do you remember a discussion that was documented regarding issues – she has issues resolving – revolving around anxiety or the comment there that says, issues revolve around anxiety?
>
> A.   Yes.
>
> Q.   And what was that – what was the purpose of that discussion or why was that discussion had at that meeting?
>
> A.   Why did the IEP discuss that?
>
> Q.   Under what context did that issue come up?
>
> A.   I'm not remembering the exact wording.
>
> Q.   And then on the next page, do you remember a discussion about OCD in the classroom and what the teachers were seeing? Do you recall at all?
>
> A.   The teachers commented that Brianna was a very hard worker and took her homework very seriously. And maybe it's more – she overly zealous and put – took – put in a lot of effort and time on her homework. She's a very

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-1671 PSG (PLAx) | Date | June 29, 2009 |
|---|---|---|---|
| Title | Brianna Marcotte v. Palos Verdes Peninsula Unified School District | | |

young lady, very motivated.

Q.    Did they ever mention that the OCD was interfering with her ability to keep up with her class work?

A.    No.

Q.    Did they ever mention that her OCD was affecting her actual class work in any way?

A.    Not to my knowledge.

(AT, Oct. 3, 2007, 67:14-68:13.)  Even Brianna's own neuropsychologist apparently agreed, as evidenced by the testimony provided by Mitchell:

Q.    And back to the October, 2005 IEP, do you recall that Dr. Nancy Markel was present at that meeting; is that correct?

A.    Yes.

Q.    And was – did she participate in that IEP team meeting?

A.    (No response.)

Q.    In terms of was she – was she allowed to provide input to the team?

A.    I believe she did, yes.

Q.    And there were points where she chimed in about certain things about Brianna?

A.    Yes.

Q.    Did she ever indicate to the IEP team at that meeting that Brianna's anxiety – anxiety levels weren't being accurately determined by the IEP team

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1671 PSG (PLAx) | Date | June 29, 2009 |
|----------|------------------------|------|---------------|
| Title | Brianna Marcotte v. Palos Verdes Peninsula Unified School District | | |

meeting?

A.    Not to my knowledge; not to my recollection.

Q.    Did she ever indicate at that meeting that the OCD – the OCD discussion that she was had was not an accurate description of her OCD – how her OCD is affecting her education?

A.    Not to my recollection.

(AT, Oct. 5, 2007, 130:6-131:2.)

After reviewing all the information before it, the IEP team made two initial determinations.  First, Brianna was eligible for special education as a student with Other Health Impairment ("OHI").  (Ex. 2 at p. 1.)  Second, Brianna was eligible as a student with a Specific Learning Disability ("SLD").  (*Id.*)  Also, at the meeting, the IEP team developed goals and objectives in the following areas: math application, reading comprehension, math computation, math reasoning, pragmatics, language, social/emotional, participation within the classroom environment.  (*Id.* at pp. 6-14.)  Inter alia, the specific recommendations made were as follows: Brianna was to attend a Resource Specialist Program at Palos Verdes High School in a block schedule, receive Designated Individual Services ("DIS") counseling once a week, DIS counseling for social skills once a week, occupational therapy once a month, and speech/language services once a week.  (*Id.* at p. 2.)  The team also developed plans to help Brianna transition from high school to post school.  (*Id.* at p. 15.)

The Marcottes did not consent to the implementation of this IEP.  (*Id.* at p. 17.)  After raising a variety of concerns, the Marcottes requested additional assessments in academic fluency in the areas of reading, mathematics, writing fluency, Asperger's Syndrome/social skills, assistive technology, and orientation mobility.  (AT, Oct. 3, 2007, 68:14-69:4.)  There is no evidence, however, that the Marcottes explicitly requested further assessment of Brianna's OCD.

D.    The Second Round of Assessments

In response to the Marcottes' requests, the District conducted a number of additional assessments.  For example, Jan Schlesinger ("Schlesinger"), a physical therapist, conducted an

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 08-1671 PSG (PLAx) | Date | June 29, 2009 |
|---|---|---|---|
| Title | Brianna Marcotte v. Palos Verdes Peninsula Unified School District | | |

occupational/physical therapy assessment.[4]  (AT, Oct. 22, 2007, 8:15-11:10.)  Her report, which is dated December 3, 2005, indicates that although Brianna has some difficulty when it comes to balance and coordination issues, physical therapy services were not needed because Brianna's difficulty in getting from place to place was not due to a physical problem, but a mental problem. (Ex. D-7 at p. 3.)

A supplemental psycho-educational evaluation was prepared by Mitchell, the District's school psychologist who initially assessed Brianna in preparation for the IEP team's first meeting.  (Ex. D-8.)  At the outset, Mitchell's report notes that it was prepared at the Marcottes' request for additional assessment in the areas mentioned above.  (*Id.*)  However, the report seems to be prepared specifically in response to the Marcottes' concern that their daughter was suffering from Asperger's Syndrome.  (*Id.*)

Among other things, the report contains a summary of a classroom observation conducted by Mitchell on November 10, 2005.  (*Id.* at p. 4.)  Generally speaking, although Brianna did pick at her lower lip throughout the class period, Mitchell observed that there was nothing clinically significant about Brianna's classroom participation.  (*Id.*)  In fact, if anything, the report suggests that Brianna functions like most children of a like age; she was friendly, engaged, and energetic while at school.  (*Id.*)  Ultimately, Mitchell concluded that while Brianna presented as a more dependent and anxious child outside of school than she does when she is in school, the assessment did not support a diagnosis of Asperger's Syndrome.  (*Id.* at p. 16.)

The District also retained Janice Carter-Lourensz ("Carter-Lourensz"), a doctor who practices behavioral pediatrics and child psychiatry, to clarify the concern about Brianna's difficulty orienting within a classroom and campus and to more generally determine how issues relating to Pachygyria might affect Brianna.  (AT, Oct. 3, 2007, 99:21-100:16.)  Carter-Lourensz was also charged with recommending whether Brianna would be able to tolerate the Palos Verdes High School environment.  (*Id.* at 100:12-16.)

As evidenced by Carter-Lourensz's testimony, she was well-aware of a connection between Brianna's Pachygyria and her OCD.  (AT, Oct. 3, 2007, 111:9-112:11; 123:10-128:10.) And while Carter-Lourensz did in fact recommend that Brianna pursue her education at Palos

---

[4] Prior to assessing Plaintiff, Schlesinger had never assessed anyone with Pachygyria.  (AT, Oct. 22, 2007, 26:15-19.)

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1671 PSG (PLAx) | Date | June 29, 2009 |
|---|---|---|---|
| Title | Brianna Marcotte v. Palos Verdes Peninsula Unified School District | | |

Verdes High School on a trial basis, she advised that such a trial occur during the summer. (*Id.* at 133:10-25.)  Additionally, while Carter-Lourensz thought that Brianna's OCD might present problems for Brianna in the classroom in such areas as note-taking, Carter-Lourensz also conceded that the note-taking support provided by the IEP would address that issue. (*Id.* at 182:6-15.)  These findings were presented at the January 25, 2006 IEP meeting in oral form, as Carter-Lourensz's report was not prepared until after the meeting. (*Id.* at 174-77.)  The report suggests that Brianna continue to receive speech and language services, occupational therapy services, and physical therapy services. (Ex. 12 at pp. 12-13.)

The last assessment conducted after the first IEP meeting was administered by Jason Hilkey ("Hilkey") of Pathways Therapy. (AT, Oct. 4, 2007, pp. 6-26.)  The purpose of this assessment was to determine whether assistive technology could assist Brianna with written expression. (*Id.* at 10:4-9.)  This report noted that Brianna would benefit from assistive technology, despite her reluctance to use it. (*Id.* at 24-26.)

E.    The Second IEP Meeting

On January 25, 2006, the District convened another meeting of Brianna's IEP team to review the assessments conducted after the first IEP meeting. (AT, Oct. 5, 2007, 91:1-5; Ex. 3.)  This meeting was attended by a number of people, including Boyd, Mitchell, Hardesty, Schlesinger, McGinty, and Carter-Lourensz. (Ex. 3 at p. 3.)  Brianna's parents originally planned on attending the meeting. However, the parents decided not to attend the meeting because their attorney was not able to attend it herself. (AT, Oct. 3, 2007, 191:8-14.)  Accordingly, just hours before the meeting was to commence, notified the District that they would not be attending. (AT, Oct. 5, 2007, 103:10-105:7; 93:21-94:4.)

The District decided to continue with the meeting even though the Marcottes were not present. (AT, Oct. 5, 2007, 105:8-13.)  At that meeting, the IEP team developed goals and objectives in the following areas: math application, reading comprehension, reading, math computation, math reasoning, pragmatics, language, social/emotional, peer interactions, participation within the classroom environment, navigation strategies, coping strategies, semantics/pragmatics, and a daily physical navigation provider/companion. (Ex. 3 at pp. 7-17.)  The IEP then drafted goals for each of the areas of need. (*Id.*)  The District did not, however, develop specific goals and objectives that were specifically tailored to Brianna's OCD.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 08-1671 PSG (PLAx) | Date | June 29, 2009 |
|---|---|---|---|
| Title | Brianna Marcotte v. Palos Verdes Peninsula Unified School District | | |

After this meeting, the District provided a copy of the IEP to the Marcottes, who refused consent for its implementation.  (AT, Oct. 5, 2007, 123:8-125:16.)  Consequently, Brianna remained at Summit View School until she graduated from there.  (AT, Oct. 2, 2007, 36:19-20.)

F.    The Annual IEP Meeting

On December 11, 2006, the District convened the annual review meeting of Brianna's IEP. (AT, Oct. 5, 2007, 125:4-6.)  This IEP meeting was attended by the Marcottes as well as Boyd, Zaft, one of Brianna's teachers, Brianna's counsel, and certain personnel from Summit View School, who attended via telephone. (Ex. 4 at p. 18; AT, Oct. 5, 2007, 126:23-24.)  At this meeting, the IEP team discussed Brianna's progress and reviewed her previous year's goals and objectives.  (AT, Oct. 5, 2007, 126:18-21.)  After updating those goals, the IEP team again made its offer for placement at Palos Verdes High School.  (*Id.* at 127-28.)  Brianna, however, declined.

G.    Procedural History

On April 16, 2007, Brianna filed a due process complaint.  (ALJ Decision at p. 1.)  Then, on October 1, 2, 3, 4, 5, and 22, 2007, a due process hearing was held before ALJ Gomez, during which time two issues were presented to her.  First, did the District fail to assess Brianna in the area of Obsessive Compulsive Disorder?  And, second, did the District's offer of placement contained in the October 17, 2005 and January 26, 2006 IEPs constitute a FAPE?  (*Id.* at pp. 1-2.)

ALJ Gomez issued her written decision in this matter on December 17, 2007.  She concluded that Brianna "was assessed in all areas of suspected disability including Obsessive Compulsive Disorder." (*Id.* at p. 18.)  As to the second issue before her, ALJ Gomez concluded that the "District did offer Brianna a FAPE." (*Id.*)

IV.    Conclusions of Law

A.    Statutory Scheme

Believing "the educational needs of millions of children with disabilities were not being fully met," 20 U.S.C. § 1400(c)(2), Congress enacted the Individuals with Disabilities Education Act ("IDEA") "to ensure that all children with disabilities have available to them a free appropriate public education . . . designed to meet their unique needs and prepare them for further

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-1671 PSG (PLAx) | Date | June 29, 2009 |
|---|---|---|---|
| Title | Brianna Marcotte v. Palos Verdes Peninsula Unified School District | | |

educational, employment, and independent living," and "to ensure that the rights of children with disabilities and parents of such children are protected." *Id.* at § 1400(d)(1)(A)-(B). Accordingly, all states receiving federal education funding must comply with specific federal requirements designed to provide a FAPE for children with disabilities. *See id.* at § 1412(a)(1). As defined in the IDEA, FAPE means:

> special education and related services that— (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with the individualized education program required under section 614(d) [20 USCS § 1414(d)].

*Id.* at § 1401(9) (edit in original).

The FAPE is implemented by means of an IEP that tailors the FAPE to the unique needs of the disabled child. *See id.* at § 1414(d); *Bd. of Educ. of Hendrick Hudson Cen. Sch. Dist. v. Rowley*, 458 U.S. 176, 181, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982). Under 20 U.S.C. § 1414(d), every disabled child must have an IEP drafted and put into effect by the local educational authority. *Van Duyn v. Baker Sch. Dist.*, 502 F.3d 811, 818 (9th Cir. 2007). The IEP is to be formulated by a team that includes (i) the parents of a child with a disability; (ii) not less than one regular education teacher of such child (if the child is, or may be, participating in the regular education environment); (iii) not less than one special education teacher, or where appropriate, not less than one special education provider of such child; (iv) a representative of the local educational agency who (I) is qualified to provide, or supervise the provision of, specially designed instruction to meet the unique needs of children with disabilities; (II) is knowledgeable about the general education curriculum; and (III) is knowledgeable about the availability of resources of the local educational agency; (v) an individual who can interpret the instructional implications of evaluation results, who may be a member of the team described in clauses (ii) through (vi); (vi) at the discretion of the parent or the agency, other individuals who have knowledge or special expertise regarding the child, including related services personnel as appropriate; and (vii) whenever appropriate, the child with a disability. 20 U.S.C. § 1414(d)(1)(B).

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-1671 PSG (PLAx) | Date | June 29, 2009 |
|---|---|---|---|
| Title | Brianna Marcotte v. Palos Verdes Peninsula Unified School District | | |

The FAPE implemented by the IEP "must address such matters as the child's present level of academic achievement, annual goals for the child, how progress toward those goals is to be measured and the services to be provided to the child." *Van Duyn,* 502 F.3d at 818 (citing 20 U.S.C. § 1414(d)(1)(A)(i)).  However, "[a]n 'appropriate' public education does not mean the absolutely best or 'potential-maximizing' education for the individual child . . . The states are obliged to provide a basic floor of opportunity through a program individually designed to provide educational benefit to the handicapped child." *Seattle School Dist. No. 1. v. B.S.,* 82 F.3d 1493, 1500 (9th Cir. 1996) (citing *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994)).

The IDEA allows the parents of a disabled child (as well as the local educational authority) to bring a complaint to the state educational agency about "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A).  If such a complaint is not otherwise resolved, the parents or the local educational agency involved in the complaint have an opportunity for an "impartial due process hearing" at which a hearing officer makes a determination of "whether the child received a free appropriate public education." *Id.* at § 1415(f)(3)(E)(i).[5]  After going through the due process hearing and any other available

---

[5]      20 U.S.C. § 1415 provides:

(E) Decision of hearing officer.
        (i) In general. Subject to clause (ii) a decision made by a hearing officer shall be made on substantive grounds based on a determination of whether the child received a free appropriate public education.

        (ii) Procedural issues.
In matters alleging a procedural violation, a hearing officer may find that a child did not receive a free appropriate public education only if the procedural inadequacies--
        (I) impeded the child's right to a free appropriate public education;
        (II) significantly impeded the parents' opportunity to participate in the decision making process regarding the provision of a free appropriate public education to the parents' child; or
        (III) caused a deprivation of educational benefits.

        (iii) Rule of construction. Nothing in this subparagraph shall be construed to preclude a hearing officer from ordering a local educational agency to comply with procedural requirements under this section.

        (F) Rule of construction. Nothing in this paragraph shall be construed to affect the right of a parent to

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-1671 PSG (PLAx) | Date | June 29, 2009 |
|---|---|---|---|
| Title | Brianna Marcotte v. Palos Verdes Peninsula Unified School District | | |

administrative remedies, an aggrieved party may file a civil action in federal district court.  *Id.* at § 1415(i)(2)(A).

B.    <u>Standard of Review</u>

In an action challenging an impartial due process hearing under the IDEA, the IDEA provides that "the court shall receive the records of the administrative proceedings[,] shall hear additional evidence at the request of a party[,] and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  *Id.* at § 1415(i). "Thus, judicial review in IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review."  *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471 (9th Cir. 1993).  Notably, although courts do not use a highly deferential standard when reviewing state administrative decisions under the IDEA, they are nevertheless prohibited from "substitut[ing] their own notions of sound educational policy for those of the school authorities which they review."  *Rowley*, 458 U.S. at 206.  Rather, courts are to give "due weight" to the proceedings, *id.*, though they are "free to accept or reject the findings in part or in whole" after carefully considering the findings and endeavoring to respond to the hearing officer's resolution of each material issue.  *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987). According to the Ninth Circuit, such review is essentially a form of de novo review.  *B.S.*, 82 F.3d at 1499 ("The Ninth Circuit has interpreted this [20 U.S.C. § 1415(i)] as calling for de novo review.").

Now exactly how much weight a court gives a hearing officer's findings is a matter for the discretion of the court.  *Gregory K.*, 811 F.2d at 1311.  In exercising this discretion, however, courts are to pay attention to the thoroughness of the findings.  *Capistrano Unified Sch. Dist. v. Wartenberg by & Through Wartenberg*, 59 F.3d 884, 891 (9th Cir. 1995).  "The amount of deference accorded the hearing officer's findings increases where they are 'thorough and careful.'"  *Id.* (quoting *Union Sch. Dist.*, 15 F.3d at 1524).

C.    <u>Burden of Proof</u>

_____

file a complaint with the State educational agency.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 08-1671 PSG (PLAx) | Date | June 29, 2009 |
|----------|----------------------|------|---------------|
| Title | Brianna Marcotte v. Palos Verdes Peninsula Unified School District | | |

"The burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief," whether that is the disabled child or the school district. *Schaffer v. Weast,* 546 U.S. 49, 62, 126 S. Ct. 528, 163 L. Ed. 2d 387 (2005).

D.    Analysis

There is both a procedural and a substantive test to evaluate compliance with the IDEA. Reviewing courts must inquire:

> First, has the State complied with the procedures set forth in the Act? And second, is the individualized education program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?

*B.S.*, 82 F.3d at 1498-99 (citing *Rowley*, 458 U.S. at 206-07).

It is Brianna's position that the District both procedurally and substantively denied her a FAPE.  Accordingly, as ALJ Gomez found otherwise, Brianna now seeks reversal of ALJ Gomez's decision.  More specifically, Brianna argues that the District failed to procedurally comply with the IDEA because (1) the educational professionals charged with evaluating her neuro-cognitive needs lacked the knowledge and competence to do so; (2) the educational professionals ignored crucial data when developing the IEPs; and (3) the District ignored the Marcottes' concerns expressed at the first IEP meeting.[6]  She also attacks ALJ Gomez's decision on the ground that, in light of the many procedural violations outlined above, the IEPs could not have been reasonably calculated to confer her with some educational benefit that addresses her unique needs.  In other words, she essentially claims that because the foundation on which the house sits has problems, so must the house.  Each of these contentions is evaluated in turn.

### 1.    Whether the District Complied with the Procedural Requirements of IDEA

---

[6] Brianna also asserts two other procedural violations including failure to give proper notice of the January 25, 2006 IEP meeting, and deprivation of parental participation at the same meeting.  She did not, however, designate those issues for hearing before ALJ Gomez.  In fact, it was not until she submitted her closing brief that those issues were brought to ALJ Gomez's attention.  Accordingly, ALJ Gomez found those issues to be outside the scope of the hearing and her decision.  The Court agrees with ALJ Gomez's decision to exclude those issues.

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-1671 PSG (PLAx) | Date | June 29, 2009 |
|---|---|---|---|
| Title | Brianna Marcotte v. Palos Verdes Peninsula Unified School District | | |

The Court first considers whether the District complied with the procedures set forth in the IDEA. *B.S.*, 82 F.3d at 1499. The Court takes up this analysis beginning with Brianna's argument that the assessments were not conducted by "persons knowledgeable of [her] disability," Cal. Ed. Code § 56320(g), and who were "competent to perform the assessment," as required by the California Education Code. *See id.* at § 56322. Brianna takes the position that the District's evaluators and diagnosticians "hardly understood" her "rare" condition. As evidence of this lack of understanding, Brianna points to the testimony of these evaluators and diagnosticians in which they admit that, prior to assessing Brianna, they had never assessed anyone with Pachygyria. (*See, e.g.,* AT, Oct. 4, 2007, 55:9-11 (Hardesty testimony); AT, Oct. 5, 2007, 138:22-24 (Mitchell testimony); AT, Oct. 22, 2007, 26:15-19 (Schlesinger testimony)). Brianna also points to the fact that, with the exception of Mitchell, none of the evaluators and diagnosticians had conducted independent research on Brianna's disease. (*Compare* AT, Oct. 4, 2007, 55:9-11 (Hardesty testimony) *with* AT, Oct. 5, 2007, 139:5-11 (Mitchell testimony).) The Court, however, finds otherwise.

As an initial matter, the Court notes that Brianna points to no authority in support of the proposition that if an evaluator and diagnostician has never assessed someone with a particular disability, that evaluator and diagnostician must necessarily lack the competence to do so. This comes as no surprise to the Court. Presumably, evaluators and diagnosticians that hold professional degrees from accredited institutions and who have vast experience in their professional fields, like those evaluators and diagnosticians in this case, have the competency to assess a wide variety of disabilities. For instance, as ALJ Gomez found, Hardesty had a Bachelor of Science degree in occupational therapy from the University of Southern California, had eleven years of experience as a licensed occupational therapist, and had worked as an occupational therapist for the District for nine years. (ALJ Decision at p. 10 n.14.) Mitchell had equally impressive credentials, if not more so. She had a Bachelor of Science Degree and Masters Degrees in Special Education, Educational Psychology, and Counseling/Guidance. She had also been employed as a school psychologist by the District for 19 years. (*Id.* at 4.) While it may very well be true that the District's evaluators and diagnosticians lacked expertise on Brianna's specific disabilities, the law does not require expertise, or even a form of specialization for that matter; it only requires competency. *See* Cal. Ed. Code § 56322.

Brianna essentially attempts to impute incompetence and lack of knowledge to the evaluators and diagnosticians based solely on the fact that they lack experience with this specific disability. But she has presented insufficient evidence to call into question what are apparently

**O**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-1671 PSG (PLAx) | Date | June 29, 2009 |
|---|---|---|---|
| Title | Brianna Marcotte v. Palos Verdes Peninsula Unified School District | | |

otherwise fine credentials.  If anything, it appears that the evaluators and diagnosticians were plenty competent and knowledgeable about Brianna's unique needs.  Indeed, all evaluators and diagnosticians testified that they familiarized themselves with Brianna's disability by reading reports prepared by other professionals, including those prepared by Brianna's own neuropsychologist.  (*See, e.g.,* AT, Oct. 4, 2007, 55:12-14 (Hardesty testimony); AT, Oct. 5, 2007, 139:5-11.)  Thus, it appears that the evaluators and diagnosticians took reasonable steps to become knowledgeable and competent of Brianna's specific disabilities.  Accordingly, for the foregoing reasons, the Court finds that Brianna has not adequately demonstrated that those who conducted the relevant assessments lacked knowledge of Brianna's disability or competence to do so.

The Court next considers whether the District failed to adequately consider certain data that Brianna considers clinically significant.  In particular, Brianna contends that the District failed to properly consider certain concerns raised by some of Brianna's teachers at Summit View School, (*see* Ex. 9 at pp. 7-8), Mitchell's repeated observations that Brianna picks at her lower lip during class, (*see id.* at p. 7 & Ex. D-8 at p. 4), and a 33 point differential between a test administered by Markel in 2002 and another test administered by Mitchell in 2005.  According to Brianna, the only possible rationale for this marked differential relates to the progression of Brianna's OCD.  Brianna also contends that the District should not have proceeded with the January 25, 2006 meeting because Carter-Lourensz had not yet prepared her report.  (AT, Oct. 3, 2007, at 174-77.)  In sum, Brianna essentially argues that because the District failed to consider all of the aforementioned, the record evidences the fact that the District failed to adequately consider her OCD.  However, contrary to Brianna's arguments otherwise, the evidence does not so indicate.

The Court begins with Brianna's contention that the District ignored certain observations by her teachers and administrators which indicated that she suffered from OCD in class.  In support of this claim, Brianna cites to remarks made in one of Mitchell's reports.  For instance, Brianna's biology teacher noted that Brianna "appeared withdrawn, fearful/anxious, and lacked confidence." (Ex. 9 at p. 7.)  She also points to statements made by Sullivan, Brianna's school counselor, who indicated that Brianna can be "fearful/anxious," "appears depressed," and "experiences abnormally high anxiety."  (*Id.* at p. 8.)  Yet, while these two individuals' observations suggest that Brianna's OCD is readily apparent in the classroom, what they do not do is establish that Brianna's OCD disrupts her ability to participate educationally or socially to such a degree that services are needed to assist her.  Additionally, and perhaps more importantly,

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 08-1671 PSG (PLAx) | Date | June 29, 2009 |
|---|---|---|---|
| Title | Brianna Marcotte v. Palos Verdes Peninsula Unified School District | | |

three other teachers submitted conflicting reports that cut strongly against Brianna's argument. All three of these teachers expressed no concerns with Brianna's classroom behavior. (*Id.* at pp. 7-8.)  In fact, these teachers described her as diligent, curious, bright, self-motivated, and having "awesome classroom behavior." (*Id.*)

Brianna also argues that the District ignored certain of Mitchell's observations.  In particular, she points to two different instances when Mitchell observed Brianna picking at her lip during class, a symptom that, according to Brianna, is indicative of OCD.  (Ex. 9 at p. 7 & Ex. D-8 at p. 4.)  It is Brianna's position that the District minimized the importance of these observations at the two IEP meetings.

The main problem with this argument is that there is insufficient evidence that Brianna needed services to correct this claimed symptom.  Indeed, the record is devoid of any indication that this behavior disrupted Brianna in any way whatsoever.  Now it may very well be the case that the lip picking is a symptom of Brianna's OCD.  But there is insufficient evidence indicating that this symptom, whether analyzed individually or collectively with Brianna's other OCD symptoms, interfered with Brianna's life to such an extent that she was being denied educational benefit absent some state provided service.  The point being made here is that Brianna failed to adequately establish the relevance of this symptom, if there is any at all.

Lastly, the Court notes that Markel did testify that she surmised that a marked differential between two tests administered three years apart is due to the increasing severity of Brianna's OCD.  (AT, Oct. 1, 2007, pp. 130-31.)  This does suggest that Brianna's OCD-based needs were becoming more serious and, therefore, should have been more explicitly addressed by the District.  However, there is also testimony that at the first IEP team meeting, a number of evaluators and diagnosticians indicated that while Brianna's OCD was evident, it did not need to be addressed in the IEP.  Markel never disputed these conclusions, though she had every opportunity to do so.  (AT, Oct. 5, 2007, 130:6-131:2.)

The last argument made by Brianna is that her parents were deprived of meaningful participation is in the IEP process.  This argument is simply not supported by the record.  Both parents were present at the first IEP meeting, where they expressed their concerns and disagreements with the IEP team's conclusions.  They requested that the District conduct further assessments in certain areas.  The District complied, in full, with those requests.  Thus, the record evidences that, contrary to Brianna's arguments otherwise, her parents were not deprived of

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-1671 PSG (PLAx) | Date | June 29, 2009 |
|----------|------------------------|------|----------------|
| Title | Brianna Marcotte v. Palos Verdes Peninsula Unified School District | | |

meaningful participation in the IEP process.

In summary, what the record evidences to the Court is that the issues relating to Brianna's OCD were properly raised at the IEP meetings, properly analyzed, and ultimately determined to be non-issues. It thus appears that Brianna makes a leap in logic. She essentially assumes that because the IEPs do not provide services that directly address her OCD, the District must have ignored this disability. But, for the reasons stated above, the evidence does not support this conclusion. In fact, if anything, the evidence compels the opposite conclusion. Therefore, the Court rejects Brianna's argument that the District committed procedural violations of the IDEA.

> 2.    Whether the Challenged IEP Was Reasonably Calculated to Enable the Child to Receive Educational Benefits

The Court next considers whether the challenged IEPs were reasonably calculated to enable the child to receive educational benefits. *B.S.*, 82 F.3d at 1498-99. Brianna tells a story wherein she was denied a FAPE because her unique needs were not properly identified or considered by the District's assessment team. Put otherwise, Brianna argues that because the IEPs were based on incomplete and faulty interpretations and determinations made by the District's assessment team, the IEP cannot be construed to yield even minimal educational benefit. As evidence of the inadequacy of the IEPs, Brianna points to what she considers to be two troubling aspects contained therein. First, she claims that in light of the elevated "L" validity scale on the BASC, the assessment team should have known that Brianna "acts inwardly" and tends to mask all of her internal disruptions. Therefore, creating goals which place on Brianna the burden of self advocating are simply ineffective, as Brianna will never draw attention to her disabilities out of fear of failure or embarrassment. The second deficiency in the IEPs relates to what this case is really about: whether Brianna should have been placed at Palos Verdes High School or Summit View School. According to Brianna, stress reduction is the key component to any successful educational program for her. This is why she must be in a school like Summit View School, where her stresses are minimized due to the small size of the school, rather than a school like Palos Verdes High School where her stress level would likely increase due to the large size of the school and student population. Thus, Brianna argues, the IEPs fail for the simple reason that they aim to place her in an environment that will prove to be destructive in the end.

While Brianna's arguments have intuitive appeal, they are not supported by the record. The record essentially consists of a number of evaluators and diagnosticians, all of whom appear

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-1671 PSG (PLAx) | Date | June 29, 2009 |
|----------|------------------------|------|----------------|
| Title | Brianna Marcotte v. Palos Verdes Peninsula Unified School District | | |

to be competent and knowledgeable about Brianna's disability.  Indeed, as noted above, there is insufficient evidence to the contrary.  These evaluators and diagnosticians conducted a number of assessments, which indicated that Brianna's areas of weakness included: math application, reading comprehension, math computation, math reasoning, pragmatics, language, social/emotional, and participation within the classroom environment.  (Ex. 2 at pp. 6-14.)  Accordingly, at the first IEP meeting, the IEP team developed goals and objectives in these areas.  (*Id.*)  Then, after receiving the Marcottes' requests for the administration of further assessments, those assessments were administered, and the IEP team subsequently met to review the results of those assessments.  The IEP team then implemented appropriate goals and objectives in those areas deemed to be problematic.  (Ex. 3.)  These goals and objectives addressed those needs of Brianna's that were both interrelated and divorced from her OCD.  (*See, e.g.*, AT, Oct. 3, 2007, 182:6-15.)  At the end of both IEPs, the District made clear that it was willing and able to implement these IEPs at Palos Verdes High School.  Brianna, however, rejected these offers.

In the end, this case really comes down to, as many cases often do, a difference of opinion.  On one side stands Brianna, supported by her allies, parental and medical alike, all of whom argue that the IEPs offered by the District were inadequate because the District failed to properly assess Brianna in the area of OCD.  On the other side is the District, backed by a number of seasoned medical and educational professionals, the vast majority of whom, after reviewing the data in front of them, included in which was the elevated "L" validity scale, consistently concluded that Brianna's OCD was not something that needed to be explicitly addressed in the IEPs and that Brianna would function well at Palos Verdes High school.  Importantly, the District appears more than justified in the conclusions it reached.  Accordingly, this Court cannot say, as Brianna urges it to do, that the District's offers of placement contained in the October 17, 2005 and January 25, 2006 IEPs did not constitute a FAPE.  In fact, the opposite appears true.  This is why, after review of the administrative record, the Court finds that the District's offers of placement in both IEPs constituted a FAPE.  Accordingly, the Court AFFIRMS ALJ Gomez's decision.

V.     <u>Waiver of All Remaining Claims</u>

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-1671 PSG (PLAx) | Date | June 29, 2009 |
|----------|------------------------|------|---------------|
| Title | Brianna Marcotte v. Palos Verdes Peninsula Unified School District | | |

During trial, the Court inquired into Brianna's claims for violations of Section 504 of the Rehabilitation Act, and the ADA,[7] as neither of these claims were discussed in Brianna's briefs to this Court. Brianna's counsel represented that she intends to prosecute these claims during another court trial. However, for the reasons that follow, the Court finds that this option is foreclosed to Brianna.

On August 18, 2008, the parties submitted a Joint Status Report in which they represented that "[t]his suit is an appeal of findings and determinations made in that decision." *See* Dkt. # 14. However, nowhere to be found in the Joint Status Report is there any mention of Brianna's Section 504 claim or her ADA claim.

The Joint Status Report serves various important purposes, including identifying and narrowing those issues that are to be decided at trial. By only identifying one claim in the Joint Status Report, Brianna indicated her intent to pursue only that claim at trial. For this reason, the Court finds that Brianna waived her Section 504 and ADA claims.

Brianna is also foreclosed from pursuing these claims at a later date because she failed to comply with the Court's scheduling order. Trial was originally set for April 21, 2009 and later continued for 45 days. *See* Dkt. # 15; Dkt. #24. There is no mention in the scheduling order of two different trial dates. *See* Dkt. # 15. Rather, the scheduling order is clear: trial was to occur over the course of one day and one day only. *Id.*

When trial occurred, Brianna was not prepared to pursue her Section 504 and ADA claims. This is unacceptable. A "scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). Indeed, failure to comply with a scheduling order can lead to sanctions, including dismissal or default. *See* Fed. R. Civ. P. 16(f)(1). It was incumbent upon Brianna to be prepared to pursue her claims on the date of trial. Her failure to be so prepared is sufficient reason for the Court to dismiss her claims.

---

[7]In her complaint, Brianna asserts four claims: review de novo for violations of IDEA, violation of 42 U.S.C. § 1983, violation of Section 504 of the Rehabilitation Act, and violation of the ADA. The Court has already dismissed Plaintiff's section 1983 claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 08-1671 PSG (PLAx) | Date | June 29, 2009 |
|---|---|---|---|
| Title | Brianna Marcotte v. Palos Verdes Peninsula Unified School District | | |

Therefore, in light of the following, the Court finds that Brianna may not pursue her Section 504 and ADA claims at a later date.

VI.    <u>Conclusion</u>

Based on the foregoing, the Court AFFIRMS the decision issued by ALJ Gomez.

**IT IS SO ORDERED.**